BOYD v. GORMAN.

(Supreme Court, Appellate Division, First Department. May 20, 1898.)

1. CREDIBILITY OF WITNESS.
   Where a witness undertakes, 10 years after an occurrence, to give the result of conversations which were not reduced to writing, it affords no necessary ground for attack upon his honesty that he is not able to give them correctly, or that his testimony in that regard is overthrown by the testimony of the other party to them.

2. WITNESS—USE OF MEMORANDUM.
   In an action brought by an attorney to recover for services, part of which were rendered to the defendant's husband, but upon her alleged

retainer, the plaintiff's register, from which he made up a memorandum to refresh his recollection on the stand, and which was neither offered by him in evidence nor referred to, but was offered in evidence by defendant, showed that plaintiff, when preparing his memorandum, had inserted in the register an entry stating that the retainer was by the defendant. *Held* that, under those circumstances, this could not be treated as a fabrication of testimony, or as necessarily discrediting the plaintiff's testimony on other points.

Appeal from judgment on report of referee.

Action by William A. Boyd against Gertie A. Gorman. From a judgment entered on the report of a referee, defendant appeals. Affirmed.

Argued before PATTERSON, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Treadwell Cleveland, for appellant.

Thomas Allison, for respondent.

RUMSEY, J. The plaintiff is an attorney at law, and he brought this action to recover the value of legal services which he rendered to the defendant during a series of years. The learned referee before whom the case was tried rejected a portion of his claim, but directed a judgment to be entered in his favor for the remainder of the claim to a considerable amount, and the appeal is taken by the defendant from the judgment which was entered upon his report. It is stated by the counsel for the defendant in his points, as it was stated upon the argument, that the only question presented upon the appeal involves a review of the conclusions of the referee drawn from conflicting evidence, and to maintain his appeal he stands upon the proposition that the referee erred in those conclusions. While the exceptions to the rulings of the referee upon questions of the admission of evidence are not insisted upon by the appellant nor mentioned in his brief, we have examined them sufficiently to satisfy ourselves that those rulings were correct, and that, if the appellant is to succeed at all in this court, it must be upon the proposition that the conclusions of the referee, based, as they are, upon conflicting evidence, are not sustained by the testimony. Although the case is quite voluminous, but three witnesses were sworn, and the testimony of one was upon a comparatively unimportant point. The plaintiff's case stood entirely upon his own testimony, and this the defendant endeavored to meet only by her own denials and explanations. Each party put into the case much documentary evidence, which is relied upon to strengthen his own position and overthrow that of his adversary, and it was necessary for the referee to consider that testimony in reaching the conclusion which he did.

The services for which this claim was made may be roughly divided into two classes: Those which were claimed to have been rendered in actions brought against the defendant's husband, but upon her retainer; and those which were rendered for the defendant herself, in regard to her own matters, and upon her own retainer. For the services of the first class the plaintiff was not permitted to recover, the learned referee concluding, with considerable hesitation, that the plaintiff had not borne the burden resting upon him of estab-

lishing a definite assumption by the defendant of liability for these services, and for that reason, as to them, the plaintiff was not permitted to recover. Upon this conclusion of the referee the learned counsel for the appellant bases an argument to overthrow the other conclusions reached by the referee. His claim is that, as the plaintiff testified positively to a retainer by the defendant to defend the suits brought against her husband, and the referee found against him on that point, it amounts to a conclusion that the defendant intentionally testified falsely in that material particular, and for that reason the referee was not justified in believing any of the testimony which he gave, so far as he was contradicted. It appeared from the case that the plaintiff had been for a long time the attorney for the father, and afterwards for the mother, of the defendant, and finally of the defendant herself. The defendant's husband had been engaged in speculations, out of which had grown several actions against him. That the plaintiff was retained to take care of these actions is not disputed, and it is not disputed that in some of the cases, at least, the papers in the actions, after they had been served upon the defendant's husband, were brought to the plaintiff by the defendant herself. Some of the cases were settled, and the money with which the amounts were paid in settlement was furnished by the defendant, and the cases were settled by the plaintiff. These facts are practically not disputed. The only disputed fact is whether the defendant substantially, or by fair implication, can be said to have promised to pay the plaintiff for the services which he undoubtedly rendered to her husband. While upon that point the referee found for the defendant, and his finding is undoubtedly sustained by the evidence; yet we cannot say that, as a necessary result of that finding, or even by fair implication from it, it could be inferred that the plaintiff, in testifying to the retainer, willfully swore to that which he did not believe to be true. The transactions occurred at various times from 1883 to 1888. The trial took place in 1897. Where a witness, 10 years after an occurrence, undertakes to give the result of conversations which have not been reduced to writing, it affords no necessary ground for attack upon his honesty that he is not able to give them correctly, or that his testimony in that regard is overthrown by the testimony of the other party to them. It certainly cannot be necessarily inferred from these facts that the person swearing to these conversations, although his testimony is not adopted, has willfully testified to what he knows to be false. The testimony of a witness is not to be thrown aside simply because of the fact that he is mistaken in one portion of it. The maxim, "Falsus in uno, falsus in omnibus," applies only where the jury are satisfied that the witness has deliberately and intentionally sworn falsely (Moett v. People, 85 N. Y. 373), and intentional and deliberate perjury could not be inferred from this testimony, and the referee was quite right in not doing so.

But it is said that the plaintiff fabricated testimony in aid of his own case. The facts in that regard are, briefly, that when the plaintiff was preparing a memorandum of the services rendered, which was largely taken from his law register, he added to those entries in

the register, which stated the fact of his retainer to defend the Gorman suits, that such retainer was made by Mrs. Gorman. These entries from the law register were used by him simply to refresh his recollection as to the dates when the retainers were made. It was not claimed by him that the name of the defendant appeared upon these entries when they were made, and the entries themselves were not offered in evidence by him, or even referred to upon the trial, but were produced in pursuance of a demand made by the defendant, and were offered in evidence by her as a part of the plaintiff's cross-examination. This testimony, therefore, was not relied upon by the plaintiff, and was not presented to the referee for the purpose of sustaining the plaintiff's case, but was simply a private memorandum made by him for his own information, and which, had it not been put in evidence by the defendant after the plaintiff had stated that he had corrected the register according to what he claimed to be the fact, would have cut no figure in the case at all. The changes in the entries were doubtless considered by the referee, but they do not amount either to subornation, or perjury, or to forgery, or to anything else which necessarily discredits the weight to be given to the testimony of the plaintiff upon other branches of his case. If the fact that a witness is discredited in one branch of his case operates to throw out his testimony entirely, then it operates against one party as well as against another, and the fact that the plaintiff was discredited as to the retainers to defend the Gorman suits has no greater weight against him than the fact that the defendant was discredited in regard to the testimony as to the other transactions has as to her. In determining the case, then, there is no necessary inference of bad faith or dishonesty, as against either party, to be drawn from the fact that the referee discredited a portion of his testimony.

With regard to those services for which the plaintiff was permitted to recover, it is not disputed that they were rendered substantially as they were testified to by the plaintiff. The defense is either that they were paid for or that they were intended to be gratuitous. So far as the defense was a claim of payment, it clearly was for the defendant to establish it. So far as the defense depended upon the claim that the services were to be gratuitous, that was equally a matter to be established by the defendant, in view of the situation of the parties. In this situation of the case, the referee did not err in coming to the conclusion that the defendant had not borne the burden which the law put upon her in establishing her affirmative defense, and therefore he was correct in finding that the plaintiff was entitled to recover for these services. The judgment entered upon his report, therefore, must be affirmed, with costs. All concur.